UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK          FOR PUBLICATION
------------------------------------------------------------------
In re

    David L. Tullar
    dba Tullar Trucking                                 Case No. 10-11214 K
                                Debtor
------------------------------------------------------------------

## FINDINGS, OPINION AND ORDER, AFTER
## EVIDENTIARY HEARING

This Chapter 7 case presents a matter of first impression under the Homestead Law of the State of New York.[1] That question is whether the Debtor, who, ten months prior to the filing of his Chapter 7 Petition gave up his apartment because he could no longer afford it, and moved all of his personal belongings into the large "sleeper" cab of his Peterbilt truck (which is also his sole source of income), may claim the $24,000 equity in the truck as exempt under the New York "Homestead" exemption.[2] He relies exclusively on the fact that a "mobile

---

[1] The same or similar issues have been presented under the laws of other states but are of no guidance, for reasons to be discussed later.

[2] New York Exemption Law applicable to this case provides only a $2400 exemption for a "motor vehicle," and only a $600 exemption for "necessary working tools and implements." (Recent increases are inapplicable, as 11 U.S.C. §522 (b)(3) explicitly states that it is the exemption law as it exists "on the date of the filing of the petition" that is to be applied in a given case.) The applicable exemption, N.Y. C.P.L.R. § 5206 states:

    (a) Exemption of homestead. Property of one of the following types, not exceeding fifty thousand dollars in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof:

      1. a lot of land with a dwelling thereon,
      2. shares of stock in a cooperative apartment corporation,
      3. units of a condominium apartment, or
      4. a mobile home.

But no exempt homestead shall be exempt from taxation or from sale for non-payment of taxes or assessments.

home" is included in the types of property that may be exempted as a homestead so long as it is "owned and occupied as a principal residence." New York C.P.L.R. § 5206(a)(4).[3]

The Trustee relies exclusively on the argument that the Peterbilt cannot fall within the definition of "mobile home," as a matter of law.

After evidentiary hearing, the Court finds the following.

The Debtor is a middle-aged, single man, and had lived in a rented apartment in Corfu, New York. He bought the Peterbilt in 2005 to earn a living as an independent owner-operator, in long-haul trucking.

On or about May 15, 2009 (about ten months before the filing of his Chapter 7 Petition), the Debtor had to give up his apartment because he could no longer afford it, and has resided in the truck, except for one night that he spent in the hospital.

If the Debtor has any relatives or close friends, he has not stayed overnight with any of them since he moved into his truck. Nor has he slept in a motel.

As a long-haul trucker, he has historically been on the road 360-362 days per year, all but 50 or 60 of them outside the state of New York.

He has a post office box in Corfu, New York.[4]

His driver's license, truck registration, and, apparently, proof of insurance, all bear only his post office address. His voter registration card apparently bears his Corfu apartment address, but he has not voted since he moved out of the apartment. (Presumably, if he

---

[3] The applicable text of C.P.L.R. § 5206(a) is at footnote 2 above.

[4] Venue in this district has not been challenged. Presumably, he had "lived" in this district for more of the 6 months preceding the filing of the Petition, than he had in any other district. 28 U.S.C. § 1408.

decides to vote again, he may need to re-register, and the Board of Elections might be faced with a decision somewhat similar to that facing this Court today, albeit for a different purpose.)

When on the road, the Debtor tries to park at truck stops because they are safe and offer amenities such as showers.[5]

The Peterbilt is equipped with a bed, a lavatory, heat, air conditioning, 110 volt electricity, some means to refrigerate and to heat food, and is 8 feet wide.

By law, he is permitted to drive 11 hours per day, to a maximum of 70 hours per week, then he must take 34 hours off. He typically drives 50 to 60 hours per week.

The only possessions that he has that he does not keep in his Peterbilt are a 1997 Ford F 250 truck and cash in a bank account.[6]

The Debtor does not own any realty, nor does he lease any apartment, house or condominium.

The Debtor is seeking to discharge $102,906 in unsecured debts. These are credit card debts. When asked what he uses his credit cards for, his response was "for everything." The Court concludes that this means food, fuel, tolls, insurance, and all other business and personal expenses.

The Debtor has grossed as much as $190,000 per year, but, he testifies, his

---

[5]As noted above, venue has not been challenged. At evidentiary hearing, counsel and the Court neglected to ask the Debtor to where he heads when headed for "home" here in this District. The Court does take judicial notice, however, of the fact that there is a very large truck stop in or adjacent to Corfu, New York. (At Exit 48A of the New York State Thruway.)

[6]Again, neither counsel nor the Court remembered to ask the Debtor at evidentiary hearing where he keeps the Ford truck when he is driving the Peterbilt. Because evidence is closed, and the Debtor's credibility has not been placed at issue, the Court will presume, for the sake of argument only, that the Ford is left at the truck stop in or near Corfu.

revenues have been down in the past couple of years, and fuel costs and other operating and maintenance expenses of his trucking business have gone up. Though completely irrelevant to the exemption issue presented before the Court (this not being an objection to discharge or to dischargeability of any particular debt) the Court observes that the Debtor's endeavor as an independent owner-operator has not been successful, and has come at a high price (overall) to his many unsecured creditors. In so stating, the Court means no criticism of the Debtor or of his lenders: rather, this case may present yet another example of the consequences of the "financial melt-down" for ordinary working people and *their* creditors. (Even if this case is or were simply the result of a misjudgment on the Debtor's part as to his ability to profitably earn his living as an owner-operator, it is a purpose of the bankruptcy laws to provide an honest debtor with relief from mistakes or misjudgments, and an opportunity for a "fresh start.")

### DISCUSSION AND ANALYSIS

All of the following is directed by the command in N.Y. Statutes § 324 which provides "statutes which provide reasonable exemptions of a debtor's property from liability for his debts should receive an enlarged and liberal construction."

As to the issue at Bar, there appears to be no previous published case under the New York Homestead Law. The <u>homestead</u> <u>exemption</u> for a "mobile home" does not <u>require</u> reference to the question of whether a mobile home is realty or personalty for other purposes. (For other purposes, it is personalty unless it has become a fixture on land. There is statutory clarity as to how to perfect liens thereupon or strip-down of liens). But, there is no case under

New York Law that even approximates the case before the Court.

Many analogous cases have been presented with regard to the homestead laws of other states.  For example, there are houseboat cases, which is to say water-borne dwelling places that are not self-propelled, and have only a flexible affixation to realty.[7]  Camper trailer cases.[8]  There are cases with regard to boats that are self-propelled, such as boats available for charter.[9]  There are "motor home" cases,[10] and even a case involving a motor home that cannot be operated as such because the owner cannot afford to make the engine operable.[11]  But, each of these cases is distinguishable from the present case either because the pertinent homestead exemption for the state at issue is dispositively differently,[12] or because the homestead law of the state in question has been so extensively developed, examined, and articulated by the courts of that state as to offer no guidance regarding the New York homestead law regarding mobile homes.[13]

---

[7] See, for example, *In re Scudder*, 97 B.R. 617 (Bankr. S.D. Ala. 1989).

[8] See, for example, *In re Meola*, 158 B.R. 881.  (Bankr. S.D. Fla. 1993).

[9] See, for example, *Norris v. Thomas*, 215 S.W.3d 851 (Tx. 2007); *In re Ross*, 210 B.R. 320.  (Bankr. N.D. Ill. 1997).

[10] See, for example, *In re Bubnack*, 176 B.R. 601 (Bankr. M.D. Fla. 1994); *In re Mangano*, 158 B.R. 532 (Bankr. S.D. Fla. 1993); and *In re Irwin*, 293 B.R. 28 (Bankr. D. Ariz. 2003).

[11] *In re Yetlaw*, 316 B.R. 560 (Bankr. M.D. Fla. 2004).

[12] For example, the Illinois homestead exemption (as described in *Ross*) extends even to "personal property . . . occupied as a residence."

[13] For example, see the opinion of the High Court of the State of Texas, upon certification from the Fifth Circuit Court of Appeals, regarding the availability of the homestead exemption for a sailing boat that was available for charter, and used as such, in the case of *Norris v. Thomas*, 215 S.W.3d 851, denying an exemption for a 68' charter yacht under homestead law very similar to New York's.  That court examined the long history of Texas law requiring affixation to land.

This Court, consequently, is left exclusively to the matter of statutory interpretation.

First comes the fact (not raised by counsel) that when the State of New York "opted out" of the federal exemption list in 1982 it did so in a statute that provided not only a homestead exemption, but also a "motor vehicle" exemption, for debtors in bankruptcy. That is New York Debtor and Creditor Law § 282. Though one might argue that when "D & C Law § 282" first provided for allowance of the homestead exemption under C.P.L.R. § 5206 for bankruptcy purposes, but then went on to limit the "motor vehicle" exemption to only $2400, the legislature thereby distinguished between a "homestead" and a "motor vehicle," for exemption purposes. But that is a false assumption. It is false because a "mobile home," which is clearly available as a homestead exemption under C.P.L.R. § 5206, has since been defined as a "motor vehicle" for other purposes. (This occurred in 1993.) For example, the combination of New York Vehicle and Traffic Law §§ 122-c and 2101(n) make it clear that a mobile home is a motor vehicle. Similarly, New York Personal Property Law § 301 defines a "motor vehicle" to include a "mobile home." (It is not particularly useful to either party that these statutes define "mobile home" in a manner that excludes the Debtor's claim because they require "a structure, transportable in one or more sections, which in the traveling mode, is 8 body feet or more in width or 40 body feet or more in length, or when <u>erected</u> on site, is 320 or more square feet, and which is built on a permanent chassis and <u>designed to be used as a dwelling</u> with or without a permanent foundation when connected to require utilities, and includes the plumbing, heating,

---

This Court can find no such exposition upon the New York homestead exemption's roots.

air conditioning and electrical systems contained therein." [Emphasis added.] Clearly (and in the experience of this Court) these statutes contemplate only mobile homes "erected" or to be "erected" on land. This fact is not "useful" because these definitions were enacted 13 years <u>after</u> "mobile home" was added to the "homestead" list, and 9 years <u>after</u> enactment of D & C Law § 282, and were focused on purposes other than "homestead."

Thus, this writer must examine C.P.L.R. § 5206(a) in isolation. (The text is set forth at footnote 2, above.)

There is legislative guidance from the 1980 addition of "mobile home" to C.P.L.R. § 5206. That legislative history will be discussed below. Before that, the Court will examine the statute itself. If "mobile home" is viewed narrowly, then the four categories of the C.P.L.R. § 5206 homestead exemption have one thing in common - - the "home" is not very portable. Of course, a Debtor's ownership of a condominium or co-op is not portable at all, and though a free-standing house can be jacked up and moved, the "lot of land" is immovable. A mobile home too can be jacked up and moved, and the context of C.P.L.R. § 5206(a) is such as to presume that a debtor claiming exemption of a "mobile home" does not own the land, or else the homestead would be covered in category one of C.P.L.R. § 5206(a). If relative non-portability compelled the state to use the language it used - - as opposed to states like Wisconsin or Alabama which simply exempt a "dwelling" that might include a boat or truck - - then it would be error to exempt this Peterbilt or any other "dwelling" that can be so readily removed from the territorial reach of the Sheriff or the jurisdictional reach of a state court. There is, however, no allusion to portability in the legislative history. Rather, the "Legislative

Memorandum of Support" [McKinney's Session Laws of New York, 1980 #717] stated that the "purpose" of the 1980 amendment to § 5206(a) was:

> "To make clear that a mobile home, if occupied as a principal residence by a judgment debtor, is included within the homestead exemption."

And its "justification" was:

> "This bill would correct an apparent oversight in Chapter 181 of the Laws of 1977. While a mobile home would qualify under the present homestead exemption if the land on which it is located is also owned by the judgment debtor, it is not clear that a mobile home would be covered if located in a trailer park or on land owned by a relative of the judgment debtor,
>
> "The purpose of the homestead exemption is applicable to any residence regardless of the type of dwelling [or] the form of ownership interest."

The background was:

> "When this sub-division was included in 1977, stock in a cooperative apartment and units of condominium apartment were added to 'a lot of land with a dwelling thereon' as types of property covered by the homestead exemption. It was apparently intended at that time to include any form of ownership in a principal residence. However, the present wording does not adequately cover a mobile home if the owner does not also own the lot of land on which it is located."

Of course, the Debtor emphasizes the statement that "The purpose of the homestead exemption is applicable to any residence regardless of the type or dwelling or the form of ownership interest." And the Trustee emphasizes the Legislature's focus on the ownership of the <u>land</u> upon which the mobile home "is located."

On balance, the Court finds that the Trustee has an edge in that debate, but only a slight edge. Though it seems clear that the Legislature was concerned with what one traditionally thinks of as a "mobile home," it did not define the term. It never has, for purposes

of § 5206.  When it defined the term in 1993 for other purposes (e.g. transfers of title, liens and safety during over-the-road hauling to a site), it did not revisit § 5206.

The present inquiry has a certain parallel to the frequently-examined issue of dual-purpose residences - - business as well as home.  See, for example, this Court's decision in *In re Rupp*, 415 B.R. 72 (Bankr. W.D.N.Y. 2008), addressing two-family homes and examining cases involving variations on the theme such as debtors who reside in a unit of a motel or apartment building he or she owns; home offices; etc.  In those cases, some courts have utilized pro-rating of value, relative to space occupied.  (See, for example, *In re Hager*, 74 B.R. 198 (Bankr. N.D.N.Y. 1987)).

Here the "dwelling" is also the debtor's sole source of income (like the hypothetical live-aboard charter-boat owner or (in some cases) landlord or landlady whose tenants are in the same building or on the same parcel of real estate.  (Consequently, the Court will not today opine upon motor homes or camper trailers that are not involved in income-production, such as where a retiree "takes to the road.")  This Debtor attests, and this Court has no doubt, that if he loses this Peterbilt, he loses both his source of income and his "home." [Affidavit of Debtor dated June 4, 2010.]

In 2005, the State of New York chose to recognize that a $10,000 homestead exemption was "next to no exemption at all." [Senate Bill No. 4582, 2005 S.B. 4582, Ch. 623] It raised the exemption from $10,000 to $50,000 per person, and now legislative bills pending in the legislature argue that in some counties of this state, an exemption of $50,000 per person suffers the same deficiency.

But, nothing has been said by the State as to persons like this Debtor, whose "home" has no annexation to real estate ("fixture" or otherwise).

Consider a non-analogous hypothetical. A person lives in a travel trailer in an RV park, without (or with) a means to tow it away. Is that person denied the "homestead" exemption because the camper is on wheels and can be towed, whereas a "mobile home" cannot? How about a "5th wheeler" - - much more commodious, but requires a lot more to haul? Would it make a difference that the debtor does or does not have the means to tow it? More basically, is the existence of one or more axles (with or without functional wheels and tires) dispositive of the question of whether it is a "homestead" or not, for purposes of C.P.L.R. § 5206?

That said, the Second Circuit Court of Appeals decision in *Wornick v. Gaffney*, 544 F.3d 486 (2nd Cir. 2008) would probably resolve this case in favor of the Debtor if the Peterbilt were immobile. In the *Wornick* case, the question was whether a bankruptcy exemption was available for the cash value of reciprocal life insurance policies owned by joint debtors in bankruptcy. The Circuit acknowledged that the state exemption statute (N.Y. Insurance Law § 3212) did not, by its language, exempt that value. But the Circuit also noted that by some permissible pre-bankruptcy planning (i.e., assigning ownership of the policies) the exemptions would be available, and it concluded that the debtor's failure "to foresee the utility of such trivial maneuvers prior to filing for bankruptcy should not disqualify them for the protection of New York's life insurance exemption."

With that teaching, this Court would not hesitate to conclude that if the case before it were that of a Peterbilt with an irreparable engine, sitting on rented or licensed land,

and if the only point of contention were the axle(s) and tires that had not been removed in favor of cinder-blocks, the result (all else being equal) would favor that debtor. Remove the tires as pre-bankruptcy planning, and the result is an exempt "mobile home." That is merely a "trivial maneuver."

It is in light of that teaching that this Court concludes as follows, as matters of law.

The highly unusual (perhaps *sui generis*) facts of this case are such that the statutes provide no clear answer, and so the Court must resort to equity.

This is not just because of the absence of clear legislative, scholarly, or case law guidance, but also because of two other New York statutes. They stand in complete opposition to each other, as applied to how the Court is to interpret the words "mobile home" as contained in § 5206(a).

The first is N.Y. Statutes § 127 which states "In the construction of statutes consideration may be given to usage and custom as indicative of practical construction or as constituting a part of the circumstances surrounding enactment of the statute." This commands that the Court accept the Trustee's argument that the Legislature, in 1980, had in mind only a traditional notion of "mobile home" as a prefabricated, modular type of structure intended to be placed on a piece of land that would become "home."

The other is N.Y. Statutes § 111 which states "The courts may in a proper case indulge in a departure from literal construction and will sustain the legislative intention although it is contrary to the literal letter of the statute." As to this statute, the Drafters included this

quotation from Bacon, by way of instruction to the judge:

"In order to form a right judgment whether a case be within the equity of a statute, it is a good way to suppose the lawmaker present; and that you have asked him this question, Did you intend to comprehend this case? Then you must give yourself such answer, as you imagine he, being an upright and reasonable man, would have given. If this be, that he did mean to comprehend it, you may safely hold the case to be within the equity of the statute; for while you do no more than he would have done, you do not act contrary to the statute, but in conformity thereto."

This commands that the Court accept the Debtor's argument that the phrase "mobile home" has never been the subject of statutory definition for <u>homestead</u> <u>purposes</u> (as opposed to banking, titling, lienholding, or road safety purposes ("in the traveling mode")) <u>because</u> the Legislature knew that it could not foresee variations on the traditional theme, and concluded (as quoted above) that "The purpose of the homestead exemption is applicable to any residence regardless of the type of dwelling [or] the form of ownership interest.[14]"

The term "mobile home" clearly was possessed of a "usage and construction" in 1980, and would exclude the Peterbilt under N.Y. Statutes § 127. But if it were immobile on land not owned by a debtor, and if the court were to apply N.Y. Statutes § 111, and the Second Circuit's teaching in *Wornick*, the Peterbilt would be exempt.

The Court simply has no way to reconcile these conflicting commands in this peculiar case, but holds that <u>equity</u> commands some degree of homestead protection for the

---

[14] From the 1980 Legislative Memorandum of Support, discussed more fully above.

Debtor.[15]  The Court will adopt the "pro-rating" view used by some courts that addressed multi-purpose (home and business) dwelling.

The Court concludes as follows:

1.  If the Peterbilt were immobile and constantly remained in-place in Corfu, it would be exempt as the Debtor's "homestead" because N.Y. Statutes § 324 commands that exemption statutes be "should receive an enlarged and liberal construction."[16]

2.  The Peterbilt is not immobile, and is used by the Debtor as his sole source of income, and therefore is clearly exempt to the extent of $ 600 as "necessary working tools and implements."

3.  Because the Debtor has claimed a "motor vehicle" exemption as to the Ford, he may not claim the $2400 exemption as to the Peterbilt.

4.  As to the remainder of the equity in the Peterbilt, two-thirds is his exempt "homestead," and one-third is a non-exempt, income-producing asset, from which his creditors may recover their losses.

This allocation is not arbitrary.  There are 8760 hours in a 365-day year.  The Debtor drives, on average, 55 hours per week, which is 2860 hours in a 365-day year.  Because

---

[15]This is not like the case of *In re Wrobel*, 00-10168, in which this Court denied an exemption for the "Earned Income Credit."  That case turned on a <u>statutory</u> enumeration of specific governmental benefits that are exemptible in New York, which statute had not been amended to include the Earned Income Credit.  (Other states had enacted a response to the Earned Income Credit, for exemption purposes, one way or the other.)  Here, the State has exempted a "mobile home" and there is simply no way to determine whether it meant the customary understanding of a "mobile home," or simply a home that is mobile.

[16]This Court, for decades, has recognized either "equitable ownership" of, for example, the contract-vendee on a "land contract" who has not yet earned "title," and the fact that one who builds a "traditional" home on a lease on a Native American's reservation "owns" the land for purposes of § 5206.

he drives 360-362 days per year, the Court will ignore non-required "time-off" that might occur at a desirable, remote location.  Doing the arithmetic, almost exactly 33% of the Debtor's time is spent on the road, and the rest "at home" in his truck, albeit wherever he might be at the moment.

If the equity in the Peterbilt is $24,000, and after deduction of $600 for "necessary working tools and implements," about $7800 of the truck is not exempt.

Assuming that the Debtor can operate his business at a profit, he might benefit by conversion to Chapter 13, to pay that (and Chapter 7 administrative expenses) over the course of a three to five year Plan.

If he could not make the necessary "feasibility" showing in a Chapter 13, or if the Chapter 7 Trustee is so inclined, the Court urges the Trustee to grant the Debtor a reasonable opportunity to pay his creditors the non-exempt equity "over time."  It would be a tragedy if the Debtor were to lose both his livelihood and his "home" because of that $7800 non-exempt equity.

SO ORDERED.

Dated:      Buffalo, New York
            August 18, 2010

                                                            s/Michael J. Kaplan
                                                            _____
                                                            U.S.B.J.